UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RASHAD DRISCOLL, SR.,                                    13-CV-336-WMS-MJR

                        Plaintiff,                       REPORT AND
                                                         RECOMMENDATION
        v.

OFFICER JOSEPH RUDNICK and
TROOPER FIFIELD,

                        Defendants.

## INTRODUCTION

This case has been referred to the undersigned pursuant to Section 636(b)(1)(A) and (B) of Title 28 of the United States Code, by the Honorable William M. Skretny, for the hearing and reporting of dispositive motions for consideration by the District Court.  Before the Court is plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Dkt. No. 52) and defendants' cross-motions for the same relief. (Dkt. Nos. 55 and 60).  For the following reasons, it is recommended that plaintiff's motion for summary judgment be denied and defendants' motions for summary judgment be granted.

## PROCEDURAL BACKGROUND

This lawsuit arises from the arrest of plaintiff Rashad Driscoll, Sr. ("plaintiff") on July 24, 2009 and his subsequent conviction, after a guilty plea, for possession of a controlled substance.  Plaintiff, who is appearing *pro se*, filed an initial complaint alleging claims of

false arrest and malicious prosecution against the City of Elmira only.[1]  (Dkt. No. 1).  The Court dismissed plaintiff's claims against the City of Elmira pursuant to *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 694 (1978), because the complaint failed to allege that the constitutional violations occurred pursuant to a policy or custom of the City of Elmira.  (Dkt. No. 8).  Plaintiff then filed an amended complaint alleging false arrest and imprisonment, unlawful search and seizure, and malicious prosecution against Officer Joseph Rudnick and New York State Trooper Jason Fifield and alleging malicious prosecution against Chemung County Court Judge James Hayden and Chemung County District Attorney Weeden Wetmore.  (Dkt. No. 7).  On April 28, 2014, the Court dismissed plaintiff's claims of false arrest and imprisonment and unlawful search and seizure against Officer Rudnick and Trooper Fifield as untimely and his claims of malicious prosecution against Judge Hayden and District Attorney Wetmore on the basis of judicial and prosecutorial immunity.  (Dkt. No. 8).  Thus, the only remaining allegations subject to the instant motions for summary judgment are plaintiff's claims of malicious prosecution against Officer Rudnick and Trooper Fifield (collectively referred to as "defendants").

Following a period of discovery, plaintiff filed a motion for summary judgment.  (Dkt. 52).  Defendants responded (Dkt. Nos. 54 and 58), and also cross-moved for summary judgment (Dkt. Nos. 55 and 60).  Plaintiff filed a response to defendants' cross-motions (Dkt. Nos. 61 and 65), defendants replied (Dkt. Nos. 68 and 69), and the Court considered the motions submitted without oral argument.

---

[1]  Plaintiff was granted *in forma pauperis* status on June 20, 2013.  (Dkt. No 4).

## RELEVANT FACTS

On July 24, 2009, Officer Joseph Rudnick was employed as a police officer for the Elmira Police Department.[2]  (Dkt. No. 60-2, ¶3).  On that day, Officer Rudnick was working on a joint task force with New York State Trooper Jason Fifield.  (Dkt. No.54-2, ¶¶3-4). Officer Rudnick and Trooper Fifield were riding in a New York State Police marked car and conducting special detail in the City of Elmira.  (*Id*. at ¶4, Dkt. No. 60-2, ¶¶3-4).  At approximately 8:00 p.m., Trooper Fifield observed a black Volkswagen with Virginia license plates.  (Dkt. No. 54-2, ¶5).  There was music coming from the vehicle that could be heard more than fifty feet away, which is a violation of a City of Elmira noise ordinance.  (*Id*.; Dkt. No. 60-2, ¶5).  As a result, Trooper Fifield and Officer Rudnick initiated a traffic stop of the black Volkswagen.  (Dkt. No. 54-2,  ¶6; Dkt. No. 60-2, ¶6).

Both officers approached the vehicle.  (Dkt. No. 54-2, ¶9; Dkt. No. 60-2, ¶7). Plaintiff, the driver and only occupant of the vehicle, was asked for his license and registration.  (Dkt. No. 60-2, ¶8; Dkt. No. 54-2, ¶10).  Plaintiff asked Trooper Fifield and Officer Rudnick why he had been stopped, and they informed plaintiff that he was stopped for violating a noise ordinance.  (Dkt. No. 60-2, ¶9; Dkt. No. 54-2, ¶11).  Defendants then conducted a radio check of plaintiff's license and were told that plaintiff was on parole. (Dkt. No. 60-2, ¶¶10-11; Dkt. No. 54-2, ¶¶12-13).  Defendants were further informed, through the police radio dispatch, that plaintiff's parole officer wanted to speak to plaintiff, and that another Elmira Police Department officer and plaintiff's parole officer were traveling to the scene of the traffic stop.  (Dkt. No. 60-2, ¶13; Dkt. No. 54-2, ¶¶13-15).

---

[2]  The facts described herein are taken from the pleadings, motion papers and exhibits filed in this lawsuit.

After defendants checked plaintiff's license and returned to the vehicle, plaintiff confirmed to Officer Rudnick and Trooper Fifield that he was on parole "for drugs." (Dkt. No. 60-2, ¶12; Dkt. No. 54-2, ¶14). Plaintiff was told to exit the vehicle. (Dkt. No. 60-2, ¶14; Dkt. No. 54-2, ¶16). Plaintiff initially refused, but eventually did exit his vehicle. (Dkt. No. 54, pgs. 34-35). Officer Fifield then began a pat-frisk of plaintiff for weapons. (Dkt. No. 60-2, ¶15; Dkt. No. 54-2, ¶17). However, plaintiff ran away on foot before the pat frisk could be completed. (Dkt. No. 60-2, ¶16; Dkt. No. 54-2, ¶18; Dkt. No. 54, pg. 35-36). Trooper Fifield and Officer Rudnick began chasing plaintiff, and Officer Rudnick observed plaintiff throw something on the ground as he was running. (Dkt. No. 60-2, ¶¶17-18; Dkt. No. 54-2, ¶¶19-20). Officer Rudnick yelled to Trooper Fifield that plaintiff had thrown something away. (Dkt. No. 54-2, ¶20; Dkt. No. 54, pg. 36). Trooper Fifield went to recover the discarded object while Officer Rudnick continued to chase plaintiff. (Dkt. No. 54-2, ¶21). Officer Rudnick observed plaintiff jump over a fence and continue running. (Dkt. No. 54, pg. 37). Officer Rudnick then decided to abandon the chase because defendants were in possession of plaintiff's identification and vehicle. (*Id.*) Plaintiff was not apprehended or arrested that day. (*Id.*)

The discarded object was a clear plastic bag containing a chunky white substance, which Trooper Fifield and Officer Rudnick believed to be cocaine. (Dkt. No. 60-2, ¶19; Dkt. No. 54-2, ¶21). A field test was performed which indicated that the substance contained cocaine. (Dkt. No. 60-2, ¶21; Dkt. No. 54-2, ¶22; Dkt. No. 54, pg. 37). The substance was also submitted to the New York State Police Western Regional Crime Laboratory in Olean, New York for examination. (Dkt. No. 54, pgs. 37-38). It was determined that the chunky white substance contained 820 milligrams of cocaine. (*Id*. at pgs. 39-40).

A little over two months later, on October 1, 2009, plaintiff was indicted by a Chemung County Grand Jury for Criminal Possession of a Controlled Substance in the Fifth Degree.  (Dkt. No. 58, ¶3, Exh. D).  Specifically, the indictment charged plaintiff with knowingly and unlawfully possessing over 500 milligrams of cocaine on July 24, 2009.  *Id*. The Chemung County Court issued an arrest warrant for plaintiff on October 6, 2009 and plaintiff was arrested on October 31, 2009 in Broome County.  (*Id*. at ¶3, Exh. G; Dkt. No. 54, Exh. A, pg. 8).  Plaintiff moved to suppress the cocaine recovered on July 24, 2009, and his motion was denied by the Chemung County Court on February 2, 2010.  (Dkt. No. 58, ¶3, Exh. H).  On February 22, 2010, plaintiff pled guilty, in Chemung County Court, to Criminal Possession of a Controlled Substance in the Fifth Degree.  (*Id*. at ¶3, Exh. E). During his plea colloquy, plaintiff expressly admitted to knowingly possessing over 500 milligrams of cocaine on July 24, 2009.  (*Id*. at pgs. 60-61).

On March 19, 2010, plaintiff was sentenced to a period of incarceration of three and one half years and a two year period of post-release supervision.  (Dkt. No. 52-1, pg. 48). On December 27, 2012, the Supreme Court, Appellate Division, Third Department issued a Decision and Order reversing the Chemung County Court and granting plaintiff's motion to suppress the cocaine recovered on July 24, 2009.  (Dkt. No. 52-1, pgs. 53-55).  Upon motion from the Chemung County District Attorney's Office and based upon the Appellate Division's Decision and Order, the Chemung County Court dismissed the indictment.  (Dkt. No. 52-1, pg. 57-58).

Officer Rudnick authored reports about the incident on July 24, 2009 and testified before the grand jury.  (Dkt. No. 60-2, ¶24; Dkt. No. 58, ¶3, Exh. F).  He also testified at a probable cause hearing before the Chemung County Court regarding the suppression of

the cocaine.  (Dkt. No 60-2, ¶24).  Officer Rudnick did not arrest plaintiff.  (*Id*. at ¶24).

Trooper Fifield did not author or sign any reports or statements about the July 24, 2009

incident, nor was he involved in any further investigation of plaintiff.  (Dkt. No. 60-2, ¶¶24-

26).  He did not file charges, arrest plaintiff, or testify before the grand jury.  (*Id*. at ¶¶27-

29).  Indeed, Trooper Fifield had no further contact with any employee of the Elmira Police

Department regarding plaintiff after July 24, 2009.  (*Id*. at ¶30).  Officer Rudnick and

Trooper Fifield had some communication with the Chemung County District Attorney's

Office regarding plaintiff's criminal trial, but neither testified because plaintiff's criminal trial

did not go forward due to his guilty plea.  (*Id*. at ¶31; Dkt. No. 60-2, ¶25).

Plaintiff states that he was incarcerated for three years, two months and three days

as a result of his October 31, 2009 arrest.[3]  (Dkt. No. 52-1, pg. 5).  Plaintiff further states,

in his motion for summary judgment, that he did not possess cocaine on July 24, 2009, nor

did he discard a plastic bag containing cocaine on July 24, 2009.  (Dkt. No. 65, pg. 10).

## DISCUSSION

### *Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is to be granted

where "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  *See* Fed. R. Civ. P. 56.  A genuine issue of material fact

exists "where the evidence is such that a reasonable jury could decide in the non-movant's

favor." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008).  "[V]iewing the evidence

---

[3] For purposes of this motion, defendants do not dispute this fact.  However, they assert that the statement as to the amount of time plaintiff was incarcerated is not a material fact nor is it followed by a citation to evidence that would be admissible pursuant to Rule 56(e) of the Federal Rules of Civil Procedure.

produced in the light most favorable to the nonmovant, if a rational trier [of fact] could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Bay v. Times Mirror Magazine, Inc.*, 936 F.2d 112, 116 (2d Cir. 1991); *see also Matsushia Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (summary judgment is appropriate when "the record as a whole could not lead a rational trier of fact to find for the non-moving party"). When a movant has met this burden, the burden shifts to the non-movant to bring forth evidence establishing the existence of an issue of material fact. *Linares v. McLaughlin*, 423 Fed. Appx. 84, 86 (2d Cir. 2011); *see also Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 97 (2d Cir. 2007) (an issue of fact is considered "material" if it "might affect the outcome of the suit under the governing law").

In evaluating a motion for summary judgment, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, and it is the burden of the moving party to demonstrate the absence of any material facts genuinely in dispute. *Hathaway v. Coughlin*, 841 F.2d 48, 50 (2d Cir. 1988). Importantly, a court must not "weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Victory v. Pataki*, 2016 U.S. App. LEXIS 1650 (2d Cir. 2016); *quoting Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995). Where a plaintiff is proceeding *pro se*, the court must "construe the complaint liberally and interpret it to raise the strongest arguments that [it] suggest[s]." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). However, even a *pro se* litigant cannot defeat a motion for summary judgment by relying upon conclusory statements or mere allegations unsupported by facts. *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002).

_Malicious Prosecution_

In order to establish a claim for malicious prosecution under Section 1983 of Title 42 of the United States Code ("Section 1983"), a plaintiff must demonstrate a violation of his or her rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law. _Manganiello v. City of New York_, 612 F.3d 149, 161 (2d Cir. 2010). The elements of a claim for malicious prosecution in New York are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of a proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as motivation for defendant's actions." _Id_.

Here, the record reflects that there was a criminal proceeding initiated against plaintiff which resulted in plaintiff's plea of guilty and subsequent conviction. The indictment against plaintiff was later dismissed after the Appellate Division, Third Department ruled that the cocaine recovered on July 24, 2009 should have been suppressed by the trial court. Despite the fact that the indictment was ultimately dismissed, plaintiff cannot successfully establish a claim of malicious prosecution against either defendant. Specifically, and as explained in detail below, plaintiff's malicious prosecution claim against Trooper Fifield fails because, considering the undisputed facts in the light most favorable to plaintiff, it cannot be shown that Fifield initiated a criminal complaint against plaintiff, that the proceeding was terminated in plaintiff's favor, that Fifield violated plaintiff's constitutional rights, or that Fifield acted with malice. Plaintiff's claims against Officer Rudnick similarly fail because the undisputed facts demonstrate that the criminal proceeding was not terminated in plaintiff's favor, that Rudnick did not violate plaintiff's

constitutional rights, and that Rudnick did not act with malice.  Further, plaintiff's malicious prosecution claims also fail because both defendants are entitled to qualified immunity.

### Initiation of a Criminal Proceeding

While police officers do not generally commence or continue criminal proceedings, a claim for malicious prosecution can still be maintained if the officer is found to "play[] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Roham v. New York City Transit Authority*, 215 F.3d 208, 217 (2d Cir. 2000).  This element may be satisfied by showing, *inter alia*, that the officer was actively involved in the prosecution by doing things such as generating witness statements or staying in touch with the prosecutor regarding the case. *Bermudez v. City of New York*, 790 F.3d 368 (2d Cir. 2015).  Initiation or continuation of a proceeding may also be shown where an arresting officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, or withholds relevant and material information. *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999).

While Trooper Fifield was involved in the stop and frisk of plaintiff, and recovered the cocaine plaintiff was ultimately charged with possessing, the undisputed facts demonstrate that Trooper Fifield had virtually no role in the initiation or continuation of any criminal proceeding against plaintiff.  Trooper Fifield did not arrest plaintiff.  In fact, plaintiff was not arrested until over two months after his encounter with Trooper Fifield.  It is undisputed that Trooper Fifield did not sign or author any reports about the July 24, 2009 incident, did not sign or author the arrest warrant or criminal complaint, and did not testify before the grand jury, at the suppression hearing, or at a criminal trial.  In fact, the record indicates that after July 24, 2009, which was approximately two months before plaintiff was

arrested, Officer Fifield had no contact with anyone from the Elmira Police Department regarding plaintiff.  While Trooper Fifield spoke to the Chemung County District Attorney's Office about testifying at trial, no trial ever proceeded against plaintiff.  Indeed, there is no evidence in the record to demonstrate that Trooper Fifield played any role whatsoever in initiating a criminal prosecution against plaintiff or that he encouraged or participated in the continuation of any criminal proceeding.  *See Huaman v. Sirois*, 2015 U.S. Dist. LEXIS 133143 (Dist. Conn. 2015) (a police officer does not initiate a criminal proceeding by having discussions with the arresting officer...an individual "must exert some form of pressure or influence to initiate a criminal proceeding"); *Alcantara v. City of New,* 646 F. Supp. 2d 449 (SDNY 2009) (internal citations omitted) (where a defendant in a malicious prosecution case is a police officer, "courts have found a triable issue of fact as to the initiation element where the defendant officer brought formal charges and had the person arraigned, filled out complaining or corroborating affidavits, swore to and signed a felony complaint, or created false information and forwarded it to prosecutors"); *Sclafani v. Spitzer*, 734 F. Supp. 2d 288 (EDNY 2010) (in a malicious prosecution case a defendant must, at a minimum, request prosecution).

Because the undisputed facts indicate that Trooper Fifield did not initiate, encourage or continue a criminal proceeding against plaintiff, Trooper Fifield is entitled to summary judgment with respect to the malicious prosecution claim.

### *Termination of Proceedings in Plainitff's Favor*

The Second Circuit has held that a "favorable termination is not so much an element of a malicious prosecution claim as it is a prerequisite to commencement of the action." *Janetka v. Dabe*, 892 F.2d 187, 189 (2d Cir. 1989).  While a plaintiff pursuing a claim for

malicious prosecution need not prove that the disposition of the proceeding was indicative of his or her innocence, *dispositions inconsistent with innocence are not viewed as favorable terminations and therefore cannot support claims of malicious prosecution*. *Rothstein v. Carriere*, 373 F.3d 275, 287 (2d Cir. 2004); *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 199 (2000); *see also Martinez v. City of Schenectady*, 97 N.Y.2d 78 (2001) ("While a plaintiff need not prove actual innocence in order to satisfy the favorable termination prong of a malicious prosecution action...the absence of a conviction is not itself a favorable termination.")  Determinations as to whether a final disposition is inconsistent with innocence are made "under the circumstances of each case."  *Penree v. City of Utica*, 2016 U.S. Dist. LEXIS 27668 (NDNY 2016).

The Second Circuit has not specifically addressed whether the reversal of a conviction on the grounds that evidence supporting the conviction was illegally obtained and erroneously admitted constitutes "favorable termination" for purposes of a malicious prosecution claim.  *Frederick v. The City of New York*, 2016 U.S. Dist. LEXIS 39828 (EDNY 2016).  However, the Northern District of New York has held that a reversal of a conviction by the Appellate Division on the grounds that "the evidence was tainted by an unlawful search and seizure, and/or chain of custody over the evidence could not be established" was not a favorable termination as a matter of law.  *Lynch v. Ackley*, 811 F.3d 569 (NDNY 2013); *see also Layou v. Crews*, 2013 U.S. Dist. LEXIS 141219 (NDNY 2013) (finding that the criminal proceeding was not terminated favorably where plaintiff was convicted at a criminal trial, but the conviction was later reversed on appeal because the evidence was obtained through a faulty search warrant).  In addition, the New York State Court of Appeals has held that a criminal proceeding was not terminated favorably for the

accused where a felony conviction was reversed because the evidence that formed the basis for the conviction was wrongfully obtained. *Martinez*, 97 N.Y.2d at 84-85 (explaining that "plaintiff's conviction was reversed not because of her lack of culpability–indeed, her guilt was proven beyond a reasonable doubt–but because the evidence that formed the basis for her conviction was obtained pursuant to a faulty search warrant").[4]

Similarly here, plaintiff's conviction was not reversed because of his lack of culpability.   Instead, the indictment was dismissed after the Appellate Division, Third Department determined that the cocaine found should have been suppressed because the defendants did not have sufficient reasonable suspicion to conduct a pat frisk of plaintiff on July 24, 2009.   (Dkt. No. 58, Exh. I).   Indeed, during his plea colloquy on February 22, 2009, plaintiff expressly admitted, under oath, that he knowingly possessed over 500 milligrams of cocaine on July 24, 2009.   (Dkt. No. 58, Exh. E, pgs. 60-61).   Specifically, the court asked plaintiff why he had decided to enter a guilty plea and plaintiff stated, under oath, that he possessed cocaine in his hand on the date in question and that he knew the substance he possessed was cocaine.   (Dkt. No. 58, Exh. E, pgs. 23-24).   Further, plaintiff stated, under oath, that he accepted the accuracy of the reports which confirmed that the substance he possessed contained over 500 milligrams of cocaine.   *Id*.

The indictment was ultimately dismissed not because it was later discovered that plaintiff was innocent of the charges, but rather because it was later determined that the cocaine plaintiff possessed was not admissible against him.   Notwithstanding the fact that

---

[4]   Federal courts may consider New York state cases in analyzing claims for malicious prosecution brought under Section 1983.   *See Conway v. Vill. of Mount Kisco*, 750 F.2d 205, 214 (2d Cir. 1984) ("Because there are no federal rules of decision for adjudicating §1983 actions that are based upon claims of malicious prosecution, [courts] are required by 42 U.S.C. §1988 to turn to state law.")

the indictment was ultimately dismissed, it cannot be said, in light of plaintiff's guilty plea and his very specific admissions during the plea colloquy, that the final determination of plaintiff's case is consistent with innocence.  In fact, plaintiff's acceptance of a plea to the indictment and his sworn admissions about possessing cocaine are directly inconsistent with innocence.  While plainitff now makes self-serving statements in his motion papers that he did not possess cocaine on July 24, 2009, these statements are wholly belied by plaintiff's previous statements, made under oath, and are not supported by any sworn testimony or evidence in the record.  *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) (holding that "bald assertions, completely unsupported by evidence", cannot defeat summary judgment); *Hicks v. Baines*, 593 F.3d 159, 167 (2d. Cir. 2010) ("[A] party cannot create a triable issue of fact merely by stating in an affidavit the very proposition they are trying to prove."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994) (the bald assertion of some alleged factual dispute will not defeat a properly supported motion); *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case.")

Because plaintiff cannot establish that the proceeding against him was terminated in his favor, Officer Rudnick and Trooper Fifield are entitled to summary judgment as to the malicious prosecution claim.

### Probable Cause

The absence of probable cause is an essential element of a claim for malicious prosecution.  *McClellan v. Smith*, 439 F.3d 137 (2d Cir. 2006).  Here, plaintiff's indictment

serves as evidence of probable cause for his arrest and further prevents his claim of malicious prosecution against either defendant.

A grand jury indictment "creates a presumption of probable cause that may only be rebutted by evidence that the indictment was procured through fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (internal citations omitted); *see also Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003) ("Where there is some indication in the police records that, as to a fact crucial to the existence of probable cause, the arresting officer may have lied in order to secure an indictment and a jury could reasonably find that the indictment was secured through bad faith or perjury, the presumption of probable cause created by the indictment may be overcome.") (internal citations omitted).   In this case, the grand jury was presented with evidence, including sworn testimony from Officer Rudnick, that he observed plaintiff discard a bag containing a white substance while fleeing from the scene.   The white substance was later tested and found to contain 820 milligrams of cocaine.   This was certainly sufficient probable cause to indict plaintiff for criminal possession of a controlled substance in the fifth degree.[5]   *See Rounseville v. Zahl*, 13 F.3d 625, 629-30 (2d Cir. 1994) (In the context of malicious prosecution, probable cause is "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.")

---

[5]   A person is guilty of criminal possession of a controlled substance in the fifth degree when he knowingly possesses cocaine weighing five hundred milligrams or more."   NY Penal Law §220.06(5)

Moreover, there is no basis to conclude that the indictment was procured through fraud, perjury, the suppression of evidence, or any bad faith on the part of the officers involved.  The record is devoid of any evidence that defendants lied about their interaction with plaintiff on July 24, 2009, committed perjury, hid relevant evidence, or otherwise acted in bad faith.  Additionally, the Court rejects any argument that probable cause did not exist to arrest or indict plaintiff because the initial pat risk of plaintiff was later determined, by the Appellate Division, Third Department, to be unlawful.  The pat frisk, which was initially upheld by the trial court, was not determined to be unlawful until over three years after plaintiff was indicted by a grand jury.  *See Gaston v. City of New York*, 851 F. Supp. 2d 780, 793 (SDNY 2012) (probable cause must be evaluated "in light of the facts known or believed as the time the prosecution initiated").  In addition, the Second Circuit has held that the fruit of the poisonous tree doctrine is inapplicable to civil proceedings in the context of Section 1983.  *Townes v. The City of New York*, 176 F.3d 138 (2d Cir. 1998).  Therefore, despite the fact that plaintiff fled the scene while being subjected to what was later found to be an unlawful pat frisk by defendants, the bag of cocaine plaintiff was observed discarding during his flight still served as sufficient and independent probable cause to indict him for possession of a controlled substance in the fifth degree. *See Jenkins v. City of New York,* 478 F.3d 76 (2d Cir. 2007) (affirming the district court's conclusion that the fact that the line-up identifications were fruit of the poisonous tree has no effect in a Section 1983 litigation alleging false arrest and malicious prosecution, since the doctrine "has generally been held to apply only in criminal trials"); *DiMascio v. City of Albany*, 2000 U.S. App. LEXIS 903 (2d Cir. 2000) (because fruit of the poisonous tree doctrine is inapplicable in Section 1983 proceedings, "even assuming that the arresting

officers lacked probable cause to stop [plaintiff's] car, there is no evidence from which a reasonable jury could conclude in this Section 1983 action that the officers lacked probable cause to arrest [plaintiff] for unlawful possession of guns and knives" that they found after stopping him); *Cyrus v. City of New York*, 2010 U.S. Dist. LEXIS 2800 (EDNY 2010) (gun discovered on plaintiff's person, even though recovered following a search incident to an unlawful arrest in plaintiff's residence, is sufficient evidence of probable cause to prosecute plaintiff in the context of Section 1983 claim); *Mejia v. City of New York*, 119 F. Supp. 2d 232, 254 n. 27 (EDNY 2000) ("[t]he three subsequently seized portfolios are admissible in this action as evidence of probable cause, despite the fact that were suppressed at [plaintiff's] criminal trial...because the Fourth Amendment's exclusionary rule does not apply in civil actions other than civil forfeiture proceedings").

Because there was probable cause for plaintiff's arrest, his malicious prosecution claim fails.

*Malice*

Additionally, plaintiff cannot maintain his claim for malicious prosecution because the undisputed facts viewed in the light most favorable to plaintiff fail to show that either defendant acted with malice.  In order to demonstrate that a defendant acted with malice, a plaintiff need not "prove that the defendant was motivated by spite or hatred", but must demonstrate that the criminal proceeding was initiated "due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Rounseville v. Zahl*, 13 F.3d 625, 630 (2d Cir. 1994).  Actual malice may be inferred from a lack of probable cause to commence a criminal proceeding.  *Ricciuti v. N.Y.C. Transit Auth*., 124 F.3d 123, 131 (2d Cir. 1997).  Here, malice cannot be inferred based upon a lack of probable cause.  In

addition, the record is bereft of any evidence that defendants' acted with a wrong or improper motive, or that the actions they took in furtherance of plaintiff's arrest were motivated by any factors other than the fact that plaintiff discarded a bag of cocaine in their presence.

### Qualified Immunity

Finally, even if plaintiff could satisfy the elements of a malicious prosecution claim, which he cannot, defendants are still entitled to summary judgment on the basis of qualified immunity.  The doctrine of qualified immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).  Officials are entitled to qualified immunity when "their decision was reasonable even if mistaken" and "the doctrine gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal citations omitted).  In order to establish a defense of qualified immunity, a police officer must satisfy one of two tests: (1) that his or her conduct did not violate "clearly established rights" of which a reasonable person would have known; or (2) that it was "objectively reasonable to believe that his or her acts did not violate these clearly established rights."  *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990).  A defendant is entitled to summary judgment on qualified immunity grounds when "no reasonable jury, looking at the evidence in the light most favorable to the plaintiff, could conclude that it was objectively unreasonable for the defendant to believe that he [or she] was acting in a fashion that did not clearly violate an established federally protected right."  *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987).

Here, considering the facts in the light most favorable to plaintiff, no jury could conclude that it was objectively unreasonable for Trooper Fifield or Officer Rudnick to believe that their actions with respect to plaintiff did not violate any of his clearly established constitutional rights.  It is undisputed that neither defendant arrested plaintiff. Moreover, plaintiff's claims of false arrest and unlawful search and seizure have been dismissed as untimely.  Any actions on the part of defendants with respect to plaintiff's prosecution, including Officer Rudnick's testimony before the grand jury and at the suppression hearing, were based upon the fact that plaintiff discarded a bag containing cocaine while fleeing from defendants on July 24, 2009.  The Court regards this fact as true based upon plaintiff's sworn testimony that he possessed cocaine on July 24, 2009, Officer Rudnick's sworn testimony that he observed plaintiff discard a bag containing a white substance that appeared to be cocaine, Trooper Fifield's declaration that he recovered a bag containing a white substance that appeared to be cocaine at Officer Rudnick's directive, and the subsequent laboratory testing which confirmed that the bag contained 820 milligrams of cocaine.

Finally, the fact that the initial pat frisk of plaintiff was determined, on appeal, to be unlawful, does not preclude a finding of qualified immunity as to both defendants.  As discussed above, the fruit of the poisonous doctrine does not apply to Section 1983 claims and plaintiff's possession and discard of the bag of cocaine was independent probable cause for his arrest and continued prosecution.  Moreover, considering the undisputed facts known to defendants at the time of search, including that plaintiff had been pulled over for violation of a noise ordinance, that he was on parole, and that he repeatedly refused to exit his vehicle after being informed that his parole officer was en route to the

scene, the Court finds that reasonable officers could have differed as to whether there was reasonable suspicion to conduct a pat frisk of plaintiff for weapons.  *See e.g., Martinez v. Simonetti*, 202 F.3d 625, 206 (2d Cir. 2002) ("Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause...and in those situations the court will not hold that they have violated the Constitution."); *Lennon v. Miller,* 66 F.3d 416, 423 (2d Cir. 1995) (internal citations omitted) ("It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials...should not be held personally liable."); *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (stating that qualified immunity is available where "officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context").

## CONCLUSION

For the foregoing reasons, it is recommended that defendants' motions for summary judgment (Dkt. Nos. 55 and 60) be granted and that plaintiff's motion for the same relief be denied (Dkt. No. 52).

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Skretny, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72.  Any requests for an extension of this deadline must be made to Judge Skretny.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** See *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. See *Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R. Civ. P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

SO ORDERED.

Dated:      April 21, 2016
            Buffalo, New York


                                        /s/ Michael J. Roemer
                                        HONORABLE MICHAEL J. ROEMER
                                        United States Magistrate Judge